IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL F. CLAY, | ) | CASE NO. 5:09 CV 2600 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    Underlying facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    B.    Trial and sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    C.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    D.    Post-conviction proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
        1.    Application to re-open the appeal . . . . . . . . . . . . . . . . . . . . -9-
        2.    Motions to vacate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
    E.    Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    A.    Preliminary issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    B.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
        1.    Contrary to, or unreasonable application of, clearly established
              federal law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
        2.    Modified AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        3.    Noncognizable claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
    C.    Analysis of the grounds for relief . . . . . . . . . . . . . . . . . . . . . . . -20-
        1.    Sufficiency of the evidence . . . . . . . . . . . . . . . . . . . . . . . -20-
        2.    Prejudicial joinder/other acts evidence . . . . . . . . . . . . . . . . . -25-
        3.    Mistrial/motion for new trial . . . . . . . . . . . . . . . . . . . . . . -32-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

## Introduction

Before me by referral[1] is the petition of Michael F. Clay for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Clay is incarcerated at the Mansfield Correctional Institution and was so at the time fo the filing of the petition.[3]  He is serving a prison term of 15 years to life for murder, felonious assault, and child endangering, such sentence imposed after his 2007 conviction following a jury trial in the Summit County, Ohio, Common Pleas Court.[4]

Clay asserts three grounds for relief:  (1) that there was insufficient evidence to support his conviction,[5] (2) that the trial court improperly joined the counts against him, thus prejudicing him and violating his right to a fair trial,[6] and (3) that witness testimony given at trial prejudiced him and violated his right to a fair trial.[7]  With respect to the first ground, the State contends that the evidence at trial was sufficient to convict Clay under the standard set forth by the United States Supreme Court in *Jackson v. Virginia*.[8]  With respect to the

---

[1] Non-document entry dated 11/05/2009.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.* at 1.

[5] *Id.* at 6.

[6] *Id.* at 8.

[7] *Id.* at 9.

[8] *Jackson v. Virginia*, 443 U.S. 307 (1979); ECF # 8 at 45.

second and third grounds, the State contends that they are not cognizable on federal habeas corpus review.[9]

For the reasons that follow, I will recommend that Clay's petition be denied.

## Facts

### A.    Underlying facts

The facts, as found by the state appeals court,[10] are not disputed here.  Michael Clay met Cynthia Jones while the two were working at Taco Bell.[11]  They began dating, and Jones became pregnant.[12]  Clay did not want her to have the baby, asking her to have an abortion so as to not "ruin his life."[13]  She did not grant his request.[14]

---

[9] *Id.* at 14, 17.

[10] Facts found by the state appeals court in its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[11] ECF # 8, Attachment (state record) at 106 (Ohio Ninth District Court of Appeals Decision).

[12] *Id.*

[13] *Id.*

[14] *Id.*

Shortly after their daughter, M.C., was born, Clay lost his job.[15]  He, Jones, and M.C. moved into Jones' mother's home.[16]  Jones continued to work while Clay remained home and cared for the baby.[17]

During the brief months of her life, M.C. frequently had bruises on her head and body.[18]  Clay always claimed that they were the result of his playing too rough with her, or that they were self-inflicted.[19]

One day, when the child was approximately five months old, Jones returned home from work to find the lower half of M.C.'s body covered with burns.[20]  At the hospital, police questioned Clay.[21]  Although he consistently maintained that bath water had caused the burns, officers became suspicious when the details of the incident kept changing.[22]  Eventually, however, doctors and police determined that the burns were accidental, and no charges were filed.[23]

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 106-07.

[23] *Id.* at 107.

About three months later, when M.C. was around eight months old, Jones left one morning to go to work.[24]  An hour and a half later, Clay came downstairs holding M.C.[25]  She was not breathing and had no pulse.[26]  Clay called 911 while Jones's mother performed CPR on the child.[27]  Paramedics arrived and rushed M.C. to the hospital, where she was pronounced dead.[28]

Clay related the events surrounding M.C.'s death to several people, including Jones, police officers, and other witnesses.[29]  Each time his account changed.[30]

An autopsy revealed that M.C.'s death was a result of blunt force impacts to her head – producing 17 contusions and swelling of her brain.[31]  There was also evidence that M.C. had been strangled prior to the blunt force trauma that killed her.[32]

---

[24] *Id.*

[25] *Id.* at 108.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 115.

[30] *Id.* at 115-16.

[31] *Id.* at 114.

[32] *Id.* at 115.

## B.    Trial and sentencing

In 2006, Clay was originally indicted on six separate counts related to M.C.'s death by the Summit County grand jury.[33]  After pleading not guilty at arraignment,[34] and moving for relief from prejudicial joinder of the counts because some counts related to events that occurred in another county,[35] Clay was then charged under a supplemental indictment.[36] Subsequent to pleading not guilty to the supplemental indictment,[37] and following various motions by each side related to dismissal of charges arising out of injuries sustained by the victim in another county,[38] the trial court dismissed three counts of the indictment and permitted the amendment of a fourth.[39]

As a result, Clay was finally tried on the charges of (1) aggravated murder, (2) murder, (3) felonious assault, (4) misdemeanor child endangering, (5) felony child endangering, (6) obstructing official business, and (7) tampering with evidence.[40]  Prior to jury deliberation, the State dismissed the obstruction charge and the court denied Clay's

---

[33] *Id*. at 1-3.

[34] *Id.* at 4.

[35] *Id.* at 5-7.

[36] *Id*. at 16-17.

[37] *Id*. at 18.

[38] *Id*. at 19-29.

[39] *Id*. at 30-31.

[40] *Id.* at 108.

Rule 29 motion to dismiss the other charges.[41]  The jury thereupon convicted Clay of murder,

felonious assault, and felony child endangering.[42]  It found him not guilty of aggravated

murder, misdemeanor child endangering, and tampering with evidence.[43]  The trial court

sentenced Clay to 15 years to life in prison.[44]

## C.     Direct appeal

Clay, though new counsel,[45] timely appealed his conviction to the Ohio Ninth District

Court of Appeals,[46] raising three assignments of error:

1.     The trial court erred in denying the Appellant's oral motion for directed
       verdict pursuant to Criminal Rule 29 because the Appellee presented
       insufficient evidence in order to meet each and every element of the
       offenses Murder – a special felony, Child Endangering, and Felonious
       Assault.  In addition, the Appellant's conviction was against the weight
       of the evidence.[47]

2.     The trial court erred in failing to grant the Appellant's Motion For
       Relief From Prejudicial Joinder because trying the Appellant for
       alleged crimes of which he had previously been cleared from within

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] Clay was represented at trial by Scott A. Riley and Nancy Morrison, *see*, *id.* at
32-33, and on appeal to the Ohio Ninth District Court of Appeals by Jana L. DeLoach, *see*,
*id.* at 36.

[46] *Id*. at 36-56.

[47] *Id*. at 40.

another county greatly prejudiced his defense and violated his right to a constitutionally fair trial.[48]

3.    The trial court erred in not granting the Appellant's request for a mistrial due to the Appellee's witness highly prejudicial reference to money being raised for the Appellant's lawyer long before the Appellant was charged with any crime.[49]

The State responded in opposition,[50] and the Ohio Ninth District Court of Appeals affirmed Clay's conviction, overruling all three assignments of error.[51]

Clay then timely appealed his conviction to the Ohio Supreme Court,[52] raising the following three propositions of law:

1.    The trial court erred in denying the Appellant's oral motion for directed verdict pursuant to Criminal Rule 29 because the Appellee presented insufficient evidence in order to meet each and every element of the offenses Murder – a special felony, Child Endangering, and Felonious Assault.  In addition, the Appellant's conviction was against the weight of the evidence.[53]

2.    The trial court erred in failing to grant the Appellant's Motion For Relief From Prejudicial Joinder because trying the Appellant for alleged crimes of which he had previously been cleared from within another county greatly prejudiced his defense and violated his right to a constitutionally fair trial.[54]

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 59-82.

[51] *Id.* at 127.

[52] The appeals court decision was entered on May 7, 2008, *id.* at 105, and Clay filed his notice of appeal with the Supreme Court of Ohio on June 23, 2008.  *Id.* at 129.

[53] *Id.* at 132.

[54] *Id.*

3.      The trial court erred in not granting the Appellant's request for a mistrial due to the Appellee's witness highly prejudicial reference to money being raised for the Appellant's lawyer long before the Appellant was charged with any crime.[55]

Following a waiver of response by the State,[56] the Ohio Supreme Court, on October 29, 2008, denied Clay leave to appeal, dismissing his appeal as not involving any substantial constitutional question.[57]  The record does not show that Clay subsequently petitioned the United States Supreme Court for a writ of certiorari.

**D.      Post-conviction proceedings**

*1.      Application to re-open the appeal*

Clay next moved, *pro se*, in the Ohio Ninth District Court of Appeals, for leave to file a delayed application for reopening of his direct appeal pursuant to Ohio Appellate Rule 26(B) based on the alleged ineffective assistance of appellate counsel.[58]  In support of that motion to re-open, he asserted one assignment of error:

1.      Defendant-Appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution was violated where the judgment of the trial court was not supported by sufficient evidence and not proven beyond a reasonable doubt that Appellant committed murder, felonious assault, and child endangering.[59]

---

[55] *Id.*

[56] *Id*. at 173.

[57] *Id*. at 174.

[58] *Id*. at 175-87.

[59] *Id.* at 179.

-9-

The State responded in opposition,[60] and the Ohio Ninth District Court of Appeals thereupon denied the application as untimely.[61]

### 2.  *Motions to vacate*

While his Rule 26(B) motion was pending in the appeals court, Clay also moved, *pro se*, in the Summit County, Ohio, Court of Common Pleas, to vacate or void the judgment in his case for lack of jurisdiction.[62]  He claimed that he had never been properly indicted by the grand jury.[63]  The State responded in opposition, asserting, *inter alia*, that Clay's motion was untimely.[64]  The Court of Common Pleas denied the motion.[65]  The record does not show that Clay appealed from this denial.

In addition, also while the Rule 26(B) motion was pending and just after the prior motion to vacate was denied, Clay filed another *pro se* motion in the Summit County, Ohio, Court of Common Pleas to vacate his sentence, claiming that it violated his 14th Amendment

---

[60] *Id.* at 188-89.

[61] *Id.* at 190-91.

[62] *Id.* at 192-97.

[63] *See*, *id.* at 193.

[64] *Id.* at 198-200.

[65] *Id.* at 201-03.

due process rights.[66]  The State again responded in opposition,[67] and the Court of Common

Pleas denied the motion.[68]

Following the denial of this motion by the trial court, Clay filed an appeal of his

sentence with the state appellate court.[69]  The State moved to dismiss the appeal as

untimely,[70] to which Clay did not respond.[71]  The court of appeals then dismissed Clay's

appeal as untimely.[72]  This record does not indicate that Clay subsequently sought review of

this decision in the Supreme Court of Ohio.

**E.     Federal habeas petition**

On November 5, 2009, Clay filed a petition for a writ of habeas corpus under

28 U.S.C. § 2254[73] asserting three grounds for relief:

> Ground One:  Defendant-Appellant's right to due process of law as guaranteed
> by the Fourteenth Amendment to the United States Constitution and Article 1
> section 16 of the Ohio Constitution was violated where the judgment of the
> trial court was not supported by sufficient evidence and not proven beyond a
> reasonable doubt.

---

[66] *Id*. at 201-07.

[67] *Id*. at 215-16.

[68] *Id*. at 217.

[69] *Id*. at 218.

[70] *Id*. at 219-220.

[71] *See*, *id*. at 221.

[72] *Id*. at 221-22.

[73] ECF # 1.

Supporting facts:  The record as well as the forensic cornor's [sic] testimony solidifies petitioner's claim that the State failed as a matter of law to produce sufficient evidence that petitioner "knowingly" caused serious physical harm to Makaila and that Makaila's death was the proximate result of that serious physical harm.  Upon testimony the cornor [sic] stated that "[the] Majority [of] children don't die from this particular injury." (TR 723).  Also, stating "That this type of injury would have no affect [sic] on the health of the child." (TR 725). The record further shows that the petitioner's behavior may have been inappropriate for Makaila['s] age but it was not the behavior that caused serious harm or proved the element of "knowingly" causing serious physical harm.   The record is without evidence of abuse as defined by R.C. 2919.22(B)(1).[74]

Ground Two:  The trial court erred in failing to grant the appellant's Motion for relief from prejudicial joinder because trying the appellant for alleged crimes of which he had been previously cleared from within another county greatly prejudiced his defense and violated his right to a constitutionally fair trial.

Supporting facts:   Petitioner passed a polygraph test in regards to the superficial burns received by Makaila.  No charges were brought against petitioner after a full investigation by child services and the Portage County sheriff's department.   No testimony was given that the situation arose intentionally or knowingly.  Furthermore, the record shows that it was an isolated incident and there is no evidence indicating similar injuries have occurred in Makaila's life.  The presentation of this evidence regarding the superficial burns Makaila received months prior to her death was extremely prejudicial to the petitioner's case and resulted in the denial of his Constitutional right to have a fair trial.  All testimony given regarding the superficial burns indicated that they were accidental.[75]

Ground Three:  The trial court erred in not granting the appellant's request for a mistrial due to the appellee's witness highly prejudicial reference to money being raised for the appellant's lawyers long before the appellant was charged with any crime.

---

[74] *Id.* at 6.

[75] *Id.* at 8.

> Supporting facts:  The record reflects that petitioner was represented by court appointed counsel, and there is no evidence of any kind that money donated to help the family was used to obtain counsel.[76]

In his first ground for relief, Clay argues that the evidence presented at his trial was insufficient to establish the *mens rea* requirement of "knowingly" causing the death of another, which is an element of both murder and felonious assault.[77]  In that regard, he alleges that the State at trial only offered evidence that "accidents" had occurred, and that accidents are, by definition, incompatible with the knowledge required to sustain convictions under the statutes.[78]

Further, Clay also argues that evidence of "accidents" was insufficient to prove that he had abused M.C., and that without evidence of abuse he should not have been convicted of endangering children.[79]

The State responds that, with respect to the sufficiency of the evidence claim, the evidence against Clay at trial was sufficient under the standard laid out in *Jackson v. Virginia*.[80]  As such, the "contrary to or unreasonable application of" standard of the AEDPA has been satisfied and habeas relief is not warranted.

---

[76] *Id.* at 9.

[77] *Id.* at 21, 23, 27.

[78] *Id.* at 21.

[79] *Id.* at 21-22.

[80] *Jackson*, 443 U.S. 307; ECF # 8, at 45.

-13-

With respect to the prejudicial joinder claim, the State contends that it is not cognizable on federal habeas corpus review because the decision to join or sever charges is committed to the sound discretion of the trial court.[81]

Concerning the contention that the trial court improperly denied Clay's motion for mistrial, the State argues that it, too, is not cognizable on habeas review.[82] Like joinder, this decision is committed to the sound discretion of the trial court.[83]

In the nature of a traverse, Clay filed a "supplemental response" to the State's return of the writ.[84]

## Analysis

### A.      Preliminary issues

As a preliminary matter, I observe that the parties do not dispute, and my own review establishes, that: (1) Clay was in state custody in Ohio pursuant to his conviction and sentence in that state at the time he filed the present petition for federal habeas relief, thus

---

[81] ECF # 8, at 14, 16.

[82] *Id.* at 17.

[83] *Id.* at 19.

[84] ECF # 10. By non-document order of April 6, 2010, I had granted Clay until May 28, 2010, to file a response to the State's return. Clay's filing was delivered to the prison mail system on May 27. *Id.* at 1. Applying the well-established prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 276 (1988) (*pro se* habeas litigant's petition is deemed filed when submitted to the prison mail system for transmittal to the court), to the present situation, Clay's response is timely filed under my order of April 6.

establishing jurisdiction in this court over that petition;[85] (2) the present petition was filed within the one-year limitations period set by 28 U.S.C. § 2244(d)(1);[86] and (3) the grounds for relief presented here have been totally exhausted in the Ohio courts.[87]

Moreover, I note that Clay has not asked for an evidentiary hearing.[88]  Since the factual record is not contested in any material respect, I recommend finding that no evidentiary hearing is warranted here.[89]

---

[85] 28 U.S.C. § 2254(a); *Garlotte v. Fordice*, 515 U.S. 39, 43-44 (1995).

[86] Clay's federal habeas petition was filed November 5, 2009, or more than one year after the Ohio Supreme Court denied leave to appeal on October 29, 2008.  Moreover, as stated above, his Rule 26(B) motion to reopen and his first motion to vacate were denied as untimely.  As is now well-established, untimely-filed state post-conviction motions do not toll the federal limitations period.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005). However, as is also well-settled, the federal habeas one-year limitations period does not begin to run until the 90-day period for filing a writ of certiorari with the United States Supreme Court has elapsed following the conclusion of direct appeal in the state supreme court.  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).  That additional time more than makes the present petition timely filed within the one-year period.  In addition, Clay's second motion to vacate – filed December 22, 2008 (ECF # 8, Att. 1 at 24) and denied January 5, 2009 (*id*. at 217) – also tolls the one-year federal period inasmuch as this was a timely-filed post-conviction motion in state court.  Collectively, delaying the running of the limitations period for 90 days, and tolling it for an additional 14 days when the second motion to vacate was pending in the Ohio trial court, adequately covers the 7 days by which the filing of this petition exceeds one year from the date Clay's direct appeal was concluded, thus making this petition timely.

[87] 28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

[88] *See*, 28 U.S.C. § 2254(e)(2).

[89] *See*, *Reynolds v. Bagley*, 498 F.3d 549, 552 (6th Cir. 2007).

**B.     Standard of review**

*1.     Contrary to, or unreasonable application of, clearly established federal law*

Under 28 U.S.C. § 2254(d)(1), when the federal habeas claim was adjudicated on the merits by the state court, the writ may not issue from the federal court unless the state decision at issue was either "contrary to," or involved an "unreasonable application of," clearly established federal law.

As is now well-established, the terms "contrary to" and "unreasonable application of" are not identical.  The words "contrary to" are to be understood as meaning "diametrically different, opposite in character or nature, or mutually opposed."[90]  Under the "unreasonable application" language, a federal habeas court may grant relief only if the state court correctly identifies the governing legal principle applicable to the petitioner's claim but then unreasonably applies that principle to the facts of the petitioner's case.[91]  The proper inquiry under this clause on habeas review is whether the state court decision was "objectively unreasonable," not simply erroneous or incorrect.[92]  In addition, when analyzing the state court adjudication under either of these tests, the federal habeas court must locate clearly established federal law in the holdings of the United States Supreme Court.[93]

---

[90] *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[91] *Id*. at 407-08.

[92] *Id*. at 409-11.

[93] *Id*. at 412.

## 2. *Modified AEDPA review*

In cases where the state court did not fully address the petitioner's fairly presented constitutional claim in arriving at its decision to deny that claim, that decision is not entitled to full deference from the federal court under the AEDPA rubric. In such cases, where the state court "does not squarely address the claim, but engages in what resembles the proper constitutional analysis, [the federal habeas court] will review the record and the law, and will reverse [the state court decision] only if [the federal habeas court] determine[s] that the state court decision was contrary to, or an unreasonable application of, clearly established federal law.[94]

Stated differently, where the state court ultimately adjudicated a fairly presented constitutional claim, but did so without fully considering the federal constitutional issue raised by the petitioner, the Sixth Circuit teaches that the federal habeas court should review that state court decision by applying a modified version of AEDPA deference, along the lines set forth in *Maldonado v. Wilson*.[95] That process, as delineated in *Maldonado*, requires the federal court to first "conduct an independent review of record and applicable law,"[96]

---

[94] *Dyer v. Bowden*, 465 F.3d 280, 284 (6th Cir. 2006) (citing *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also*, *Garcia v. Andrews*, 488 F.3d 370, 374 (6th Cir. 2007).

[95] *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007) (citing *Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005)).

[96] *Maldonado*, 416 F.3d at 476 (citing *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir.2000)).

followed by applying "the AEDPA standard of whether the state court result is contrary to or unreasonably applies clearly established federal law."[97]

A modified AEDPA review was proper where the issue before the state court concerned whether federal due process rights were violated by the admission of testimony alleged to violate state evidence law and the state court decision was unclear as to whether its "finding was rooted in state evidence law or in federal constitutional law."[98]  Thus, the key, as to use of AEDPA deference, is that the state court inquiry – no matter the source – bears some similarity to the inquiry mandated under the applicable clearly established federal law.[99]

### 3.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[100]  Accordingly, it is well-settled that, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[101]  In such circumstances, a claim

---

[97] *Id*. (citing *Harris*, 212 F.3d at 943).

[98] *Id*. at 475 (citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005)).

[99] *Id*. at 476.

[100] 28 U.S.C. § 2254(a).

[101] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[102]

However, a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[103]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[104]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[105]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[106]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[107] and may not second-guess a state court's interpretation of its own procedural rules.[108]  Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[109] the Sixth Circuit has

---

[102] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir.2007).

[103] *Estelle*, 502 U.S. at 67-68.

[104] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[105] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[106] *Id.*

[107] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[108] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[109] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[110]

## C.    Analysis of the grounds for relief

### 1.    Sufficiency of the evidence

Despite the general prohibition against federal habeas corpus review of issues of state law,[111] a claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254.[112]

In *Jackson v. Virginia*, the Supreme Court held that sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[113] Obviously, this standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the

---

[110] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[111] *See*, *Lewis*, 497 U.S. at 780.

[112] *See*, *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).

[113] *Jackson*, 443 U.S. at 324; *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006); *Brown*, 441 F.3d at 351; *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 2909 (2006).

responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.[114]

The state appeals court initially noted that in his direct appeal Clay failed to differentiate between his sufficiency of the evidence and manifest weight of the evidence claims.[115]  The Ohio appellate court ultimately elected to deal first with the manifest weight claim, reasoning that since sufficiency is required to take a case to the jury, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.[116]

In considering the sufficiency of the evidence argument, the state appeals court stated that Clay's claim concerning his conviction for felonious assault was that there was no evidence that "he knowingly attempted or actually inflicted harm upon the victim,"[117] such knowledge being "a necessary element of felonious assault."[118]  Likewise, the court noted that Clay claimed his conviction for murder was not supported by sufficient evidence because the murder statute applicable here requires a showing that he had knowingly committed felonious assault.[119]

_____

[114] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

[115] ECF # 8, Attachment at 109.

[116] *Id.*, at 111.

[117] *Id.*, at 110.

[118] *Id.*

[119] *Id.*, citing Ohio Rev. Code § 2903.02(B).

Then, the Ohio Ninth District Court of Appeals identified the correct federal standard

of review for this claim, originally set forth in *Jackson*, stating that, "'[t]he relevant inquiry

is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt.'"[120]

The court proceeded to conduct a detailed review of the evidence presented against

Clay at trial going to whether Clay was shown to have knowingly caused serious physical

harm to M.C.[121]  The court first specifically observed that Ohio law provides that a person

"' acts knowingly, regardless of his purpose, when he is aware that his conduct will probably

cause a certain result or will probably be of a certain nature. A person has knowledge of

circumstances when he is aware that such circumstances probably exist.'"[122]

The state appeals court then reviewed the testimony adduced at trial in light of the

statutory requirements for conviction expressed in Ohio law, and under the *Jackson* rubric

for considering claims of insufficient evidence.[123]  Specifically, the court found "numerous

---

[120] *Id*., at 111, quoting *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 at ¶ 2 of the syllabus (1991) (superseded on other grounds by Constitutional Amendment as stated in *State v. Smith*, 80 Ohio St. 3d 89, 684 N.E.2d 668 (1997)).  This paragraph of the syllabus explicitly cites *Jackson* and indicates that its standard for determining sufficiency of the evidence is followed in Ohio.

[121] *Id.*, at 112.

[122] *Id.*, quoting Ohio Rev. Code § 2901.22(B).

[123] *Id.*, at 113.

witnesses" who testified to "always"[124] or "frequently"[125] seeing M.C. with bruises on her face and head.[126]  Moreover, the testimony from officers who observed M.C. when they responded to the 911 call uniformly noted that they, too, had observed bruising on the left side of M.C.'s face;[127] facial injuries the emergency room physician who attended to M.C. stated that he had never seen caused by efforts to resuscitate a patient[128] experiencing breathing difficulty.[129]  In addition, the physician who performed the autopsy testified that M.C. "had been strangled repeatedly prior to the blunt force trauma that ultimately claimed her life."[130]  Finally, the court noted that multiple witnesses related that Clay told various, inconsistent stories as to what happened the day of M.C.'s death;[131] stories that were contradicted by physical evidence.[132]

---

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Id.*, at 113-14.

[128] At trial, Clay explained M.C.'s injuries by claiming, among other things, that when he discovered M.C. passed out in her playpen, he hit her several times in an attempt to revive her, thus causing the bruising witnessed by others on the day of her death.  *See*, *id.*, at 115.

[129] *Id.*, at 114.

[130] *Id.*, at 115.

[131] *Id.*, at 115-16.

[132] *Compare*, *id.*, at 115, 116 (Clay told witnesses that M.C. caused her own injuries by hitting  herself repeatedly in the head with a television remote control device), and 117 (forensic examiners from Ohio BCI testified that while M.C.'s blood was found on the bed mattress, carpet, diaper bag, playpen, and door frame of the room where she died, no trace of it was found on the remote control device).

In evaluating this evidence, the Ohio appeals court observed first that, while the majority of the evidence was circumstantial, both circumstantial and direct evidence possess the same probative value.[133] The court then found "numerous pieces of evidence" before the jury sufficient to show that Clay knowingly inflicted harm on M.C. and so could be found guilty of felonious assault and murder.[134] In that regard, the court found evidence in the record here to support the following findings:

> Throughout her short lifetime, M.C. consistently showed signs of bruising. Her bruises would appear after spending time with Clay, who always attributed them to various, innocuous causes. After her death, the medical evidence showed that she was the victim of repeated smothering and ultimately died from blunt force trauma to her head that she could not have caused. Clay never gave a consistent explanation for how M.C. incurred these injuries. Rather, he changed his story many times and claimed that she died from self-inflicted wounds....
>
> The circumstantial evidence supports the conclusion that Clay consistently beat M.C. and the beatings continued to escalate until M.C. finally died as a result.... [Thus, the evidence supports the findings that] Clay knowingly caused serious physical harm to M.C. and that Clay's conduct resulted in her death.[135]

In reviewing this decision of the Ohio appeals court under the deferential standard of review created by the federal habeas statute, I recommend finding that the state court decision on this ground for relief is not an unreasonable application of the clearly established federal law of insufficiency of the evidence set forth in *Jackson*. Specifically, for the reasons

---

[133] *Id.*, at 118.

[134] *Id.*

[135] *Id.*, at 118-19, citing Ohio Rev. Code §§ 2903.11(A)(1) (defining second degree felonious assault) and 2903.02(B) (defining murder as causing the death of another while committing a felony of the second degree).

given above, I recommend concluding, as did the state appeals court, that viewing the evidence in a light most favorable to the prosecution, and drawing all reasonable favorable inferences from that evidence, any rational trier of fact could have found, as required by Ohio law, that Clay knowingly caused serious physical harm to M.C., and that such knowing conduct caused her death.  Accordingly, I also recommend that this ground for relief be denied.

### 2.     *Prejudicial joinder/other acts evidence*

In his second ground for relief Clay locates the claim in the trial court's rejection of a motion for relief from prejudicial joinder.[136]  As the state appeals court observed, the allegedly improperly joined claim was count six of the indictment, which charged Clay with child endangerment based on a continuing course of conduct from December 2005 to August 2006.[137]  This conduct essentially concerned burns M.C. received in May 2006 while Clay was bathing her.[138]  Clay argued to the Ohio appellate court, as he contends here, that:  (1) the trial court had no jurisdiction over this conduct because it occurred in Portage, not Summit, County; and (2) he was prejudiced by the introduction at trial of evidence of the burns, since those injuries were previously determined to be accidental.[139]

---

[136] ECF # 1 at 8.

[137] ECF # 8, Attachment at 119-120.

[138] *Id.*, at 120.

[139] ECF # 1 at 8.

The State, in response, follows the approach of the appeals court and argues that a trial court's decision to allow joinder is a matter committed to the court's discretion.[140]  In such cases where the defendant claims the court abused its discretion because the joinder resulted in prejudice to the defendant, the State asserts that, as a matter of Ohio law, the prosecution may rebut the allegation of prejudice by either showing:  (1) the evidence introduced by joinder would have been admissible anyway as other acts evidence, or (2) the evidence of each joined crime is "simple and direct."[141]  Thus, the State maintains, because the matter is one committed to the discretion of the trial court, and the state appeals court found no abuse of discretion, Clay's claim that he was prejudiced by the joinder should be dismissed as non-cognizable.

Before considering the claim, I note initially that it apparently has not been first fairly presented as a federal constitutional claim to either the state appeals court[142] or the Supreme Court of Ohio.[143]  Thus, although not raised by the State, there is a serious question as to whether this ground for relief was ever fairly presented to Ohio courts as a federal constitutional issue.

---

[140] ECF # 8 at 46, quoting appeals court opinion.

[141] *Id*. at 46-47, quoting appeals court opinion.

[142] *See*, ECF # 8, Attachment at 50-53 (Clay brief on appeal); 141-45 (memorandum in support of jurisdiction).

[143] I note that in his memorandum in support of jurisdiction to the Ohio Supreme Court Clay did once, without further development, use the phrase "constitutionally fair trial" in the heading to his argument.  *Id*. at 141.  However, one-time use of a general constitutional phrase in the brief heading is insufficient to fairly present the claim.  *Blackmon v. Booker*, 394 F.3d 399, 400-01 (6th Cir. 2004).

In that regard, it is well-settled that in order to exhaust a claim, issues must be raised in the context of constitutional law, not state law.[144]  It is also well-established that a general allegation that rights to a "fair trial" or "due process" were violated is not enough to fairly present a claim that specific federal constitutional rights were violated.[145]  The basic rule remains that fair presentment requires that the same claim be presented under the same theory to both the state and federal court.[146]

Clay's failure in this regard leaves this claim potentially subject to dismissal as procedurally defaulted, since there are no further state remedies available to raise this claim as a federal constitutional issue.[147]  However, because the State did not raise fair presentment/ procedural default in its return of writ and the Sixth Circuit cautions that courts should not *sua sponte* dismiss claims for procedural default without first giving the petitioner a chance to respond,[148] I recommend bypassing the issue of procedural default since resolving that question is unnecessary to adjudicating this claim against Clay on the merits.[149]

I further recommend addressing this claim under a modified AEDPA standard of review.  Although that standard normally is invoked where the federal claim has been fairly

---

[144] *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001).

[145] *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

[146] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

[147] *See*, *Rector v. Wolfe*, 2009 WL 1788569, at *14 (N.D. Ohio June 23, 2009).

[148] *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002), *amended on reh'g*, 307 F.3d 459 (6th Cir. 2002).

[149] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

presented to the state court, I observe nevertheless that the court here did undertake an analysis that is similar to that required by federal law in resolving the claim. In that regard, I note, as stated earlier, that modified AEDPA review is suitable for cases like this one involving a petitioner's claim that federal rights were violated by the allegedly improper introduction of evidence at trial in violation of state law – a claim likely to have been resolved in state courts by reference to state law. Where that analysis is similar to what would be required in federal law, modified AEDPA review holds that the state court decision should be afforded some deference.

With those predicates, I make three preliminary observations before addressing this claim on the merits:

> (1)    I note first, as the state appeals court explicitly stated, that the jury here "acquitted Clay of the [child endangerment] charge related to M.C.'s May 2006 burn injuries."[150]

> (2)    Consequently, I observe next that since, Clay is not now being held by reason of a conviction on this charge, he has no basis for raising a federal habeas argument that the trial court had no jurisdiction to try him on the charge.[151]

> (3)    However, I note finally that the trial court permitted other acts evidence of the May 2006 burn injuries to be used in making the case on the charges for which Clay was convicted, and the state appeals court affirmed that decision after applying the standard for the use of other acts evidence.

Thus, I recommend analyzing this ground for relief as stating the claim, as Clay himself did in his petition, that the use of other acts evidence prejudiced Clay by denying him

---

[150] *Id.* at 123.

[151] *See*, 28 U.S.C. § 2254(a).

"his Constitutional right to have a fair trial"[152] as to the charges on which he was eventually convicted.

Again, as the State has maintained, to the extent that Clay's claim here is based only on a purported violation of state law, he has not stated a claim upon which the writ may be granted.[153]  An issue as to the admissibility of evidence as a matter of state law does not normally state a claim for federal habeas relief unless the error was so egregious as to have denied the petitioner a fundamentally fair trial.[154]  In this case, simply put, a claim merely that the state trial court erred in the application of state law in deciding on the admission of other acts evidence does not, standing alone, state a cognizable claim for federal habeas relief.[155]

However, as noted, Clay now contends, as he did not to the Ohio courts, that the admission of the other acts evidence here denied him a fair trial.  In that regard, I note initially, as the Sixth Circuit stated in *Bey*, that there is no United States Supreme Court precedent "indicating that a state court violates a defendant's due process rights when it properly admits evidence of the defendant's other bad acts."[156]  Accordingly, Clay cannot obtain habeas relief by showing that the state appeals court decision was contrary to clearly established federal law because "[t]here is no clearly established Supreme Court precedent

---

[152] ECF # 1 at 8.

[153] *Lewis*, 497 U.S. at 780.

[154] *Estelle*, 502 U.S. at 67-68; *Bey*, 500 F.3d at 519; *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

[155] *Bey*, 500 F.3d at 519; *Bugh*, 329 F.3d at 512.

[156] *Bey*, 500 F.3d at 520.

which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."[157]

Thus, to obtain relief here, Clay must show either that the Ohio rule permitting the use of other acts evidence itself "'violates some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" or that the specific decision to admit such evidence in this case offends such a fundamental principle of justice.[158]

In the first case, Clay does not argue, nor could he, that Ohio Rule of Evidence 404(B), which permits the use of other acts evidence, is inherently unconstitutional and *per se* violates the right to a fair trial.  This Ohio rule is substantially similar to the federal rule of evidence,[159] and the Supreme Court has held that under that rule the introduction of prior acts evidence is permissible.[160]

Accordingly, Clay's only remaining argument for federal habeas purposes would be that, despite being otherwise permissible under Ohio law, the other acts evidence actually admitted here was so unfairly prejudicial to him that its admission offended some principle so deeply rooted in the traditions and conscience of our people as to be ranked as

---

[157] *Bugh*, 329 F.3d at 512.

[158] *Bey*, 500 F.3d at 521, quoting *Montana*, 518 U.S. at 43.

[159] *Broom v. Mitchell*, 441 F.3d 392, 405 n.2 (6th Cir. 2006).

[160] *See*, *Old Chief v. United States*, 519 U.S. 172, 190-92 (1997).  I note that, while the Court has approved the use of other acts evidence in the context of the Federal Rules of Evidence, it "has explicitly not addressed the issue in Constitutional terms."  *Bugh*, 329 F.3d at 513.

fundamental. That is, the argument must be that the introduction of other acts evidence of M.C.'s burn injuries into this trial rendered that trial fundamentally unfair.

In *Dowling v. United States*,[161] the Supreme Court stated that they have defined "very narrowly" the category of infractions that violate "fundamental fairness."[162] Essentially, such infractions are only those that "violate[] those fundamental concepts of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency."[163]

Here, the state appeals court found that the probative weight of the other act burn evidence outweighed any prejudice.  Specifically, the appeals court noted that the other act burn evidence was probative in that:  (1) it helped show a pattern of abuse in that M.C. always seemed to receive injuries after spending time with Clay; (2) Clay had changed his explanation for the burns in similar fashion to his changed explanations concerning the injuries that resulted in M.C.'s death; and (3) the doctor who originally stated that the burns were accidental testified at this trial that, if he had been aware then of the multiple, different explanations given by Clay as to how the burns occurred, he might have concluded the burns were not an accident.[164]

---

[161] *Dowling*, 493 U.S. 342.

[162] *Id.* at 352.

[163] *Id.* at 353.

[164] ECF # 8, Attachment at 122-24.

On that record, I recommend finding, on modified AEDPA review,[165] that the decision to admit the other acts evidence of burns in this case did not violate fundamental concepts of justice such that Clay was denied a fair trial.  Thus, I further recommend that Clay's second ground for relief be denied because the decision of the state appeals court affirming the use of other acts evidence at trial was not contrary to clearly established federal law.

### 3.    *Mistrial/motion for new trial*

In his third ground for habeas relief Clay contends that he was denied due process and a fair trial[166] when the trial court did not grant his request for a mistrial.

Although also not raised by the State,  I note first that, once again, it appears that Clay did not fairly present this claim to Ohio courts as a federal constitutional issue.[167]  However, as noted before, because *sua sponte* dismissal of this claim as procedurally defaulted would not be appropriate without obtaining a response from Clay, and because it is unnecessary to undertake a procedural default analysis where this claim may be denied on the merits, I will recommend bypassing procedural default and recommend denial on the merits.

---

[165] Where, as here, the state court adjudicated the petitioner's claim without addressing the constitutional issue, the federal habeas court reviews the claim under modified AEDPA deference, which requires the court to first conduct a careful and independent review of the record and applicable law, and then reverse the state court decision only if it is contrary to, or an unreasonable application of, clearly established federal law.  *Vasquez*, 496 F.3d at 569-70, citing *Maldonado*, 416 F.3d at 476.

[166] *See*, *e.g*., ECF # 10 at 5.

[167] ECF # 8, Attachment at 54-55 (brief on appeal); 145-47 (memorandum in support of jurisdiction).

Clay argues in this claim that a mistrial should have been declared after a prosecution witness testified that Clay took money donated for M.C.'s funeral expenses so that he could hire a lawyer.[168]  At trial, after defense counsel objected that the remark was unfounded and prejudicial since Clay had court-appointed counsel, he moved for a mistrial.[169]  The trial court rejected the request for a mistrial and instead issued a curative instruction to the jury, informing them that they should "totally disregard" the statement that money collected for M.C.'s funeral was used by Clay for an attorney, since all "the attorneys that are here today are court-appointed attorneys."[170]

In denying this claim, the state appeals court observed that Clay's argument for a mistrial rested on his assertion that the curative instruction issued by the trial court was ineffective.[171]  However, the court then noted that the burden was on Clay to show why the curative instruction was insufficient, since the trial court "framed its [curative] instruction around Clay's specific objection" to the single piece of testimony.[172]  Without a legal reason to object to the instruction, the appeals court concluded that there was no abuse of discretion in denying the mistrial.[173]

---

[168] ECF # 1 at 9.

[169] ECF # 8, Attachment at 126.

[170] Id.

[171] Id.

[172] Id.

[173] Id.

I note first, as the Sixth Circuit stated in *United States v. Stevens*,[174] that there is a wide spectrum of trial problems that could warrant a mistrial, and the scrutiny given to the declaration of a mistrial will vary depending on the underlying issue cited.[175]  The situation, as here, where it is alleged that the jury has been biased by a party's prejudicial remarks lies in the middle of the spectrum, such that the trial judge's decision whether to declare a mistrial or not "'is entitled to special respect.'"[176]

More specifically, the federal law concerning motions for a new trial or mistrial made as result of prejudicial acts during trial was stated by the Sixth Circuit in *Holmes v. City of Massillon*:[177]

> Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice can be cured by instructions of the court, the motion for a new trial should be denied.'"[178]

This rubric is based on the principle that juries "must be presumed" to follow curative instructions.[179]  As the Sixth Circuit has also stated:  "Indeed, we are excused from making this presumption only when 'there is a strong likelihood that the effect of the evidence would

---

[174] *United States v. Stevens*, 177 F.3d 579 (6th Cir. 1999).

[175] *Id*. at 583 (citations omitted).

[176] *Id.*, quoting *Arizona v. Washington*, 434 U.S. 497, 510 (1978).

[177] *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996).

[178] *Id.* at 1046-47, quoting *Clarksville-Montgomery County School Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991).

[179] *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000).

be "devastating" to the defendant,' and that there is an overwhelming probability that the jury will be unable to follow the court's instruction.'"[180]

Here, I note first that the analysis employed by the state appeals court strongly resembles that set forth in federal law.  Even though this claim, as with the previous one, was not actually presented as a federal claim to the state court, the similarity of the reasoning leads me to recommend that the state court decision be reviewed here under the modified AEDPA standard.

Under that test, I recommend finding that the state appeals court decision was not contrary to federal law.  Specifically, the objectionable evidence cited by Clay, while unfavorable, was hardly "devastating."  Moreover, there is no evidence in the record, let alone evidence of an overwhelming "probability," that the jury could not follow the plain instruction by the trial court to disregard a sole piece of evidence.  Given that the burden, as noted by the state court and as provided in federal law, is on Clay to overcome the presumption that juries follow curative instructions, I recommend finding that the state court correctly determined that Clay had not met that burden.

Thus, I recommend finding, again on modified AEDPA review, that the decision of the Ohio appeals court denying this claim was not contrary to clearly established federal law. Accordingly, I recommend that this ground for relief be denied.

---

[180] *Id.* (citation omitted).

## Conclusion

For the foregoing reasons, I recommend that the *pro se* petition of Michael F. Clay for a writ of habeas corpus under 28 U.S.C. § 2254 be denied.

Dated:   August 30, 2010                        s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[181]

---

[181] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).